IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| GAME MANAGEMENT SERVICES, INC. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. _____ |
| BVO PRODUCTIONS, LLC, MAJOR § | |
| LEAGUE BOWHUNTER, LLC, JEFFREY § | |
| DANKER, DANIEL MCVAY and § | |
| CHIPPER JONES § | |
| § | |
| Defendants. § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Game Management Services, Inc., ("GMS") files this Complaint against Defendants BVO Productions, LLC ("BVO"), Major League Bowhunter, LLC ("Major League"), Jeffrey Danker ("Danker"), Daniel McVay ("McVay") and Chipper Jones ("Jones").

## THE PARTIES

1.   Plaintiff GMS is a Texas corporation with its principal place of business in Nocona, Texas.  As a result, Game Management is a citizen of the State of Texas.

2.   Defendant BVO is an Oklahoma limited liability company with its principal place of business in Lincoln County, Oklahoma, and may be served with service of process by serving its registered agent Jeffrey Danker, 500 North Hwy. 18, Chandler, OK 74834.  Upon information and belief, all members of BVO are citizens of a state other than Texas.

3.   Defendant Major League is an Oklahoma limited liability company with its

principal place of business in Lincoln County, Oklahoma, and may be served with service of process by serving its member or managing member Jeffrey Danker, 500 North Hwy. 18, Chandler, OK 74834.  Upon information and belief, all members of Major League are citizens of states other than Texas.

      4.     Defendant Danker is an individual residing in Lincoln County, Oklahoma and may be served with service of process at 900998 S. Oak Ridge Drive, Chandler, OK 74834.

      5.     Defendant Daniel McVay is an individual residing in Lincoln County, Oklahoma and may be served with service of process at 343622 E 93rd, Chandler, OK 74834.

      6.     Defendant Chipper Jones is an individual residing in Fulton County, Georgia and may be served with service of process at 5015 Heatherwood Court, Roswell, GA 30075.

## VENUE AND JURISDICTION

      7.     This Court has subject matter pursuant to 28 U.S.C. § 1332, in that the case is between citizens of different states and the matter in controversy exceeds the amount of $75,000.00.  This Court has personal jurisdiction over the defendants because the defendants did business in the State of Texas by contracting with a Texas resident and part of the contract was to be performed in Texas, all in accordance with Tex. Civ. Prac. & Rem. Code § 17.042 and the Constitution of the United Sates.  Further, the claims set forth in this Complaint arise out of defendants' contacts with and doing business in the State of Texas.

      8.     Venue is proper in the Northern District of Texas, Wichita Falls Division, pursuant to 28 U.S.C. § 1391 (a), because a substantial part of the events or omissions giving rise to GMS's claims occurred in the Northern District of Texas.

## FACTS

9. GMS is a premier wildlife management service and full-service hunting outfitter. GMS has been featured in over 20 national publications, regional newspapers and various outdoor publications. In order to provide its customers with GMS signature hunts, the company leases land specifically tailored to the type of hunt being offered. GMS's founder is John Cox, a certified wildlife biologist with extensive game management and hunting experience.

10. Since 1995, GMS has managed and operated the hunting business on the Bar B Ranch (the "Ranch") in Beaver County, Oklahoma. GMS primarily offered guided quail hunts at the Ranch, but also offered deer hunting and spring turkey hunts. Over the years, GMS has worked at the Ranch to improve habitat, provide supplemental feeding, upkeep hunting blinds, and plant food plots. In addition, GMS had exclusive use of a lodge at the Ranch which GMS furnished, maintained and improved. GMS also constructed dog kennels and a horse barn near the lodge. GMS would pay the owner of the Ranch a portion of the proceeds from the hunting operations and GMS would use the remainder for expenses and as compensation.

11. The drought of 2011 made the prospects of a good quail season remote. As a result, the owner of the Ranch asked GMS to increase its efforts with regard to the deer hunting program. GMS booked guided deer hunts and sold seasonal deer hunting memberships for the Ranch. In addition, GMS purchased an additional 215,000 pounds of black-eyed peas for use on the Ranch as supplemental feed during the drought. In addition to booking hunts and adding supplemental feeding, GMS sought to publicize hunts at the Ranch. To that end, GMS contacted Danker, who controls BVO and Major League, through which he produces the hunting shows BuckVentures and Major League Bow Hunter (collectively "Danker") on certain television channels.

12. After preliminary discussions between GMS and Danker, the parties agreed that Danker would provide GMS free advertising services by filming and airing hunting shows at the Ranch and in return, GMS would allow BuckVentures and Major League to hunt for free on a non-exclusive basis at specific scheduled times. Danker directed several hunters to GMS for the 2011 deer season, but at a price below GMS's normal charges. GMS agreed to the discounted hunts to foster good will and to maximize the pay-out to the owner of the Ranch and to facilitate future business. Prior to allowing Danker to hunt at the Ranch, GMS required every hunter, employee and/or participant to sign a Participation Agreement (the "Agreement"). A true and correct copy of the signed Agreements between GMS and each individual defendant are attached as Exhibits 1-3.

13. Immediately after deer season started, Danker and the other defendants began to violate the Agreement and including the agreed upon number of hunters and deer that could be harvested. Further, the Agreement provides in part, "I will not attempt to negotiate any hunting rights either verbally or written or make any contact with any other party or have anyone else on my behalf initiate any negotiations to hunt on these premises without the expressed written consent of Game Management Services, Inc." Despite this agreement, defendants initiated contact with the Ranch owner and his family. GMS informed defendants that such contact was a breach of the Agreement and should immediately cease.

14. The 2011 hunting season resulted in a financial loss to GMS. Even so, after the conclusion of the deer season GMS met with the owner of the Ranch and discussed the lease for the next season. After discussions, GMS and the owner agreed that GMS would guarantee the owner a minimum of $50,000.00 for the 2012-13 season, and that GMS would increase the payments to a minimum of $60,000.00 with the additional $10,000.00 to roll over to the next season. As a result of the agreement and the course of practice for the preceding 16 years, GMS began booking hunts

for the 2012 hunting season. GMS had a particular client that agreed to provide hunts to GMS for the Ranch that had a projected revenue of between $80,000.00 to $120,000.00.

15. A few days after securing the Ranch lease and securing new hunters for the 2012 hunting season, Danker contacted GMS and asked about pursuing another agreement for his television shows at the Ranch for the 2012 season. GMS had yet to receive the television advertising already promised by Danker for the 2011 season. As a result, GMS told Danker that his request would be considered. Danker became upset and terminated the call.

16. Shortly after the call between GMS and Danker, GMS received a call from the owner of the Ranch who told GMS that defendants offered the Ranch owner $100,000.00, for the hunting rights to the Ranch for the 2012 season. Defendants breached the Agreement between GMS and defendants by contacting representatives of the Ranch and negotiating for the hunting rights. In addition, defendants were aware that GMS had an agreement with the owner of the Ranch and intentionally interfered with that agreement without legal right and for their own benefit and to the detriment of GMS. Defendants' actions caused GMS to lose its lease and hunting operations on the Ranch.

17. GMS performed all of its duties and obligations under the Agreements and satisfied any conditions precedent. In the alternative, GMS's duties to perform all conditions precedent to defendants' liability have been waived and excused by defendants' breaches of the Agreements.

18. The individual defendants were employees and agents of BVO and Major League at all material times. As a result, BVO and Major League are vicariously liable to GMS for the actions of the individual defendants.

## BREACH OF CONTRACT

19. Plaintiff incorporates by reference paragraphs 1 through 18 herein.

20. Defendants breached their Agreements with Plaintiff. As a direct and proximate result of the these breaches, Plaintiff has suffered damages related to lost guide fees, lost hunting revenue, lost advertising, lost supplemental feed, lost improvements to the Ranch, lost gratuity income, and lost value of its game management services. GMS's losses in the past and in the future exceed $750,000.00.

21. By virtue of their breaches of the Agreements, defendants are liable to Plaintiff for actual damages it suffered. In addition, GMS was forced to retain the undersigned attorneys to pursue this cause of action and has agreed to pay them reasonable attorneys' fees. Therefore, GMS is entitled to recover its reasonable attorneys' fees incurred in connection with this cause of action.

## TORTIOUS INTERFERENCE WITH CONTRACT

22. Plaintiff incorporates by reference paragraphs 1 through 21 herein.

23. Defendants' actions, set forth above, constitute tortious interference with existing and future contracts and also with prospective business relations. Defendants' actions were not privileged and resulted in harm to Plaintiff.

24. Defendants' actions caused damages to Plaintiff. Plaintiff seeks all damages in law and equity for tortious interference with contract.

25. In addition to the foregoing, GMS seeks exemplary damages as allowed by law for defendants' intentional conduct in an amount as set by the jury.

## ATTORNEY'S FEES

26. Plaintiff incorporates by reference paragraphs 1 through 25 herein.

27. GMS employed the undersigned attorneys to represent it and has agreed to pay reasonable attorneys' fees for their services. Plaintiff is entitled to recover all costs and attorneys' fees, plus interest, in addition to actual damages.

## JURY DEMAND

28. Plaintiff demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that after final trial hereof, Plaintiff be granted judgment as follows:

(1) Actual damages for breach of contract and tortious interference;

(2) Attorneys fees and expenses;

(3) Exemplary damages;

(4) Costs of court;

(5) Pre-judgment and post-judgment interest as allowed by law; and

(6) All such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ Steven E. Aldous
**STEVEN E. ALDOUS**
State Bar No. 00982100
saldous@bvalaw.com
**BRADEN, VARNER & ALDOUS, P.C.**
703 McKinney Avenue, Suite 400
Dallas, Texas  75202
(214) 740-0212
Fax: (214) 740-0217

*Attorney for Plaintiff*